http://www.va.gov/vetapp16/Files2/1617292.txt

Citation Nr: 1617292 
Decision Date: 04/29/16 Archive Date: 05/04/16

DOCKET NO. 06-34 517 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Medical and Regional Office Center in Wichita, Kansas

THE ISSUES

1. Entitlement to service connection for hepatitis C.

2. Entitlement to an initial rating in excess of 10 percent for posttraumatic stress disorder (PTSD) prior to August 20, 2008; and to a rating in excess of 50 percent thereafter. 

3. Entitlement to a total rating based on individual unemployability (TDIU) due to service connected disability. 

REPRESENTATION

Appellant represented by: Disabled American Veterans

WITNESS AT HEARING ON APPEAL

Appellant

ATTORNEY FOR THE BOARD

John Kitlas, Counsel

INTRODUCTION

The Veteran served on active duty from February 1968 to June 1969, which included combat in the Republic of Vietnam as exemplified, in part, by the fact he is a recipient of the Purple Heart Medal and the Vietnam Campaign Medal. 

This matter is before the Board of Veterans' Appeals (Board) originally on appeal from a June 2005 decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Wichita, Kansas. 

The Veteran provided testimony at a hearing before the undersigned Veterans Law Judge (VLJ) in February 2008. A transcript of this hearing is of record.

The record reflects this case was previously before the Board in May 2008, April 2010, and July 2011. In May 2008, the Board, in pertinent part, denied service connection for hepatitis C, and remanded the PTSD claim for further development.

The Veteran appealed the Board's May 2008 decision to the United States Court of Appeals for Veterans Claims (Court). By a June 2009 Order, the Court, pursuant to a joint motion for remand (JMR) vacated the Board's decision to the extent it denied service connection for hepatitis C, and remanded the case for action consistent with the JMR.

In April 2010 and July 2011, the Board, in pertinent part, remanded the hepatitis C and PTSD claims for further development, to include a competent medical examination and opinion to address the etiology of the Veteran's hepatitis C. Such an examination was accomplished in March 2012, and as detailed below the Board finds it is adequate for resolution of this case. All other development directed by the prior remands in this case has been substantially accomplished. Accordingly, a new remand is not required to comply with the holding of Stegall v. West, 11 Vet. App. 268 (1998). See Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (Remand not required under Stegall where the Board's remand instructions were substantially complied with), aff'd, Dyment v. Principi, 287 F.3d 1377 (2002).

FINDINGS OF FACT

1. All reasonable notification and development necessary for the equitable disposition of the Veteran's hepatitis C claim has been completed.

2. The preponderance of the competent medical and other evidence of record is against a finding that the Veteran's hepatitis C was incurred in or otherwise the result of his active service, to include injury sustained in combat.

3. Prior to August 20, 2008, the Veteran's service-connected PTSD more nearly approximated than not the criteria of occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care and conversation normal), due to such symptoms as: depressed mood, anxiety, panic attacks, chronic sleep impairment, and mild memory loss. 

4. For the period from August 20, 2008, the Veteran's service-connected PTSD more nearly approximated than not the criteria of occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as suicidal ideation, obsessional rituals which interfere with routine activities, near-continuous panic or depression affecting the ability to function independently, appropriately and effectively, impaired impulse control (such as unprovoked irritability with periods of violence), neglect of personal appearance and hygiene, difficulty in adapting to stressful circumstances (including work or a worklike setting), and inability to establish and maintain effective relationships.

5. The competent and credible evidence of record reflects that the Veteran is unable to maintain substantially gainful employment due to his service-connected disabilities.

CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for hepatitis C are not met. 38 U.S.C.A. §§ 1110, 1131, 1154, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.303 (2015); Veterans Benefit Administration (VBA) Fast Letter 98-110 (Nov. 30, 1998). 

2. The criteria for a rating of 30 percent for the Veteran's service-connected PTSD prior to August 20, 2008, are met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 4.1, 4.2, 4.3, 4.7, 4.10, 4.126, 4.130, Diagnostic Code 9411 (2015).
0
3. The criteria for a rating of 70 percent for the Veteran's service-connected PTSD from August 8, 2008, are met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 4.1, 4.2, 4.3, 4.7, 4.10, 4.126, 4.130, Diagnostic Code 9411 (2015).

4. The criteria for a grant of a TDIU due to service-connected disability are met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.340, 4.1, 4.2, 4.3, 4.7, 4.10, 4.16 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Preliminary Matters

VA has an obligation to notify claimants what information or evidence is needed in order to substantiate a claim, as well as a duty to assist claimants by making reasonable efforts to get the evidence needed. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A and 5107 (West 2014); 38 C.F.R. 
§§ 3.102, 3.156(a), 3.159, 3.326(a) (2015). 

Regarding TDIU, for the reasons stated below, the Veteran is entitled to a TDIU. As this represents a complete grant of the benefit sought on appeal with respect to this claim, no further discussion of VA's duties to notify and assist is required.

The Board also notes that the Veteran's appeal regarding his PTSD arises from a disagreement with the initial rating assigned following the establishment of service connection. In Dingess v. Nicholson, 19 Vet. App. 473, 490-1 (2006), the Court held that in cases where service connection has been granted and an initial disability rating and effective date have been assigned, the typical service-connection claim has been more than substantiated, it has been proven, thereby rendering section 5103(a) notice no longer required because the purpose that the notice is intended to serve has been fulfilled. Thus, VA's duty to notify regarding this matter is satisfied. See also Dunlap v. Nicholson, 21 Vet. App. 112 (2007); Goodwin v. Peake, 22 Vet. App. 128 (2008).

With respect to the hepatitis C claim, the Court has held that adequate notice, as required by 38 U.S.C. § 5103(a), must be provided to a claimant before the initial unfavorable agency of original jurisdiction decision on a claim for VA benefits. Pelegrini v. Principi, 18 Vet. App. 112, 120 (2004). In this case, the Veteran was sent pre-adjudication notice via a letter dated in August 2004, which is prior to the June 2005 rating decision that initially adjudicated the hepatitis C claim. This letter, in pertinent part, informed the Veteran of what was necessary to substantiate a service connection claim, what information and evidence he must submit, and what information and evidence will be obtained by VA. The Board acknowledges this letter did not inform the Veteran about the information and evidence used by VA to determine disability rating(s) and effective date(s) should service connection be established as mandated by the holding in Dingess v. Nicholson, 19 Vet. App. 473 (2006). However, as the Board has determined service connection is not warranted for this disability, there is no prejudice to the Veteran not being provided with such information specifically for this claim. Moreover, the Board notes the Veteran was provided with this information in correspondence for other claims, which indicates he was aware of this information. In fact, the Veteran has actively participated in the processing of his case, and the statements submitted in support of his claims to include forms and statements from his accredited representative, which indicate familiarity with the requirements for the benefits sought on appeal. See Mayfield v. Nicholson, 19 Vet. App. 103 (2005), reversed on other grounds, 444 F.3d 1328 (Fed. Cir. 2006) (VA can demonstrate that a notice defect is not prejudicial if it can be demonstrated ... that any defect in notice was cured by actual knowledge on the part of the appellant that certain evidence (i.e., the missing information or evidence needed to substantiate the claim) was required and that the appellant should have provided it.); see also Overton v. Nicholson, 20 Vet. App. 427 (2006).

All the law requires is that the duty to notify is satisfied and that claimants are given the opportunity to submit information and evidence in support of their claims. Once this has been accomplished, all due process concerns have been satisfied. See Bernard v. Brown, 4 Vet. App. 384 (1993); Sutton v. Brown, 9 Vet. App. 553 (1996); see also 38 C.F.R. § 20.1102 (harmless error). In view of the foregoing, the Board finds that the Veteran was notified and aware of the evidence needed to substantiate his claims and the avenues through which he might obtain such evidence, and of the allocation of responsibilities between himself and VA in obtaining such evidence. Accordingly, there is no further duty to notify. In any event, the Veteran has not demonstrated any prejudice with regard to the content or timing of any notice. See Shinseki v. Sanders, 129 S.Ct.1696 (2009) (Reversing prior case law imposing a presumption of prejudice on any notice deficiency, and clarifying that the burden of showing that an error is harmful, or prejudicial, normally falls upon the party attacking the agency's determination).

In addition, the Board finds that the duty to assist a claimant in the development of his or her case has been satisfied. The Veteran's service treatment records are on file, as are various post-service medical records. Further, the Veteran has had the opportunity to present evidence and argument in support of his claims, to include at the February 2008 Board hearing. Nothing indicates he has identified the existence of any relevant evidence that has not been obtained or requested. For example, he has not identified outstanding evidence which relates the etiology of his hepatitis C to his active service, or which demonstrates symptoms of his PTSD that is not reflected by the evidence already of record. 

The Board further notes the Veteran was accorded VA medical examinations in May 2005 and March 2012 which included opinions that addressed the etiology of this disability; as well as VA examinations in May 2005, August 2008, and April 2012 which evaluated his PTSD. 

The Board acknowledges that the JMR contended the May 2005 VA examiner's opinion was inadequate, in pertinent part, because it did not address the Veteran's account of possible in-service exposure to "blood products." However, this deficiency was corrected by the subsequent March 2012 VA examiner's opinion. As the March 2012 opinion was based upon both a medical evaluation of the Veteran, and an accurate understanding of his medical history based upon review of his VA claims folder, the Board finds it is supported by an adequate foundation. The Board also notes that VA examiners are presumed qualified to render competent medical opinion(s), and it does not appear the Veteran has challenged the adequacy of the March 2012 VA examiner. See Rizzo v. Shinseki, 580 F.3d 1288 (Fed. Cir. 2009). No competent medical evidence is of record which specifically refutes the opinions of the VA examiners on this matter, and the Veteran has not otherwise identified any prejudice therein. Accordingly, the Board finds that the March 2012 VA examination is adequate for resolution of the hepatitis C claim. 

Regarding the VA examinations for PTSD, the Board observes that no prejudicial inaccuracies are demonstrated with respect to the findings on these examinations, nor does it appear the Veteran has challenged the competency of these VA examiners. Further, the findings appear consistent with the other evidence of record, and the Veteran has not reported his PTSD has increased in severity since the most recent examination. Moreover, a March 2014 addendum to the April 2012 VA examination noted that review of record indicated the PTSD had not worsened since the last examination. Accordingly, the Board finds that these examinations are adequate for resolution of the PTSD claim.

In view of the foregoing, the Board finds that the duty to assist the Veteran has been satisfied in this case.

With respect to the aforementioned February 2008 hearing, Bryant v. Shinseki, 23 Vet. App. 488 (2010), held that 38 C.F.R. § 3.103(c)(2) requires that the RO official or VLJ who conducts a hearing fulfill two duties to comply with the above the regulation. These duties consist of (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. Here, during the hearing, the VLJ accurately noted the nature of the Veteran's appellate claims and asked questions to clarify his contentions. Moreover, the Veteran, through his testimony and other statements of record, has demonstrated actual knowledge of the elements necessary to substantiate his claims. Further, as discussed above, the Board has determined the Veteran has received adequate notification of the elements necessary to substantiate his hepatitis C claim. Finally, neither the Veteran nor his representative has asserted that VA failed to comply with 38 C.F.R. § 3.103(c)(2), nor has he identified any prejudice in the conduct of this hearing. As such, the Board finds that, consistent with Bryant, the duties set forth in 38 C.F.R. § 3.103(c)(2) have been satisfied. 

The Board notes that it has thoroughly reviewed the record in conjunction with this case. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the extensive evidence submitted by the appellant or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (The Board must review the entire record, but does not have to discuss each piece of evidence). Rather, the Board's analysis below will focus specifically on what the evidence shows, or fails to show, on the claims. See Timberlake v. Gober, 14 Vet. App. 122, 129 (2000) (Noting that the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant). 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the benefit of the doubt shall be given to the claimant. 38 U.S.C.A. § 5107(b). When a reasonable doubt arises regarding service origin, such doubt will be resolved in the favor of the claimant. Reasonable doubt is doubt which exists because of an approximate balance of positive and negative evidence which does not satisfactorily prove or disprove the claim. 38 C.F.R. § 3.102. The question is whether the evidence supports the claim or is in relative equipoise, with the claimant prevailing in either event, or whether a fair preponderance of the evidence is against the claim, in which event the claim must be denied. Gilbert v. Derwinski, 1 Vet. App. 49, 54 (1990). 

In making all determinations, the Board must fully consider the lay assertions of record. A layperson is competent to report on the onset and recurrence of symptoms. See Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a Veteran is competent to report on that of which he or she has personal knowledge). Lay evidence can also be competent and sufficient evidence of a diagnosis or to establish etiology if (1) the layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). When considering whether lay evidence is competent the Board must determine, on a case by case basis, whether the Veteran's particular disability is the type of disability for which lay evidence may be competent. Kahana v. Shinseki, 24 Vet. App. 428 (2011); see also Jandreau v. Nicholson, 492 F.3d at 1377 (Fed. Cir. 2007) (holding that "[w]hether lay evidence is competent and sufficient in a particular case is a factual issue to be addressed by the Board").

The Board is charged with the duty to assess the credibility and weight given to evidence. Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997), cert. denied, 523 U.S. 1046 (1998); Wensch v. Principi, 15 Vet. App. 362, 367 (2001). Indeed, in Jefferson v. Principi, 271 F.3d 1072 (Fed. Cir. 2001), the United States Court of Appeals for the Federal Circuit (Federal Circuit), citing its decision in Madden, recognized that that Board had inherent fact-finding ability. Id. at 1076; see also 38 U.S.C.A. § 7104(a). Moreover, the Court has declared that in adjudicating a claim, the Board has the responsibility to weigh and assess the evidence. Bryan v. West, 13 Vet. App. 482, 488-89 (2000); Wilson v. Derwinski, 2 Vet. App. 614, 618 (1992). 

As a finder of fact, when considering whether lay evidence is satisfactory, the Board may also properly consider internal inconsistency of the statements, facial plausibility, consistency with other evidence submitted on behalf of the Veteran, and the Veteran's demeanor when testifying at a hearing. See Dalton v. Nicholson, 21 Vet. App. 23, 38 (2007); Caluza v. Brown, 7 Vet. App. 498, 511 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996). 

Hepatitis C

Establishing service connection generally requires medical or, in certain circumstances, lay evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Hickson v. West, 12 Vet. App. 247, 253 (1999); Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996) (table). 

Determinations as to service connection will be based on review of the entire evidence of record, to include all pertinent medical and lay evidence, with due consideration to VA's policy to administer the law under a broad and liberal interpretation consistent with the facts in each individual case. 38 U.S.C.A. § 1154(a); 38 C.F.R. § 3.303(a).

Risk factors for hepatitis C include intravenous (IV) drug use, blood transfusions before 1992, hemodialysis, intranasal cocaine, high-risk sexual activity, accidental exposure while a health care worker, and various kinds of percutaneous exposure such as tattoos, body piercing, acupuncture with non-sterile needles, shared toothbrushes or razor blades. Veterans Benefit Administration (VBA) Fast Letter 98-110 (Nov. 30, 1998). A veteran may have been exposed to hepatitis C during the course of his or her duties as a military corpsman, a medical worker, or as a consequence of being a combat veteran. VBA Fast Letter 04-13 (June 29, 2004). The Board points out that there was no test available to detect the presence of hepatitis C until 1989. See VBA Fast Letter 98-110.

In this case, the Veteran essentially contends that his hepatitis C may be due to possible exposure to "blood products," that after receiving a shrapnel wound during his military service, and provided details thereof. He has denied having an organ transplant, blood transfusions to include on active duty, or being placed on dialysis. Further, he stated that he does not have any tattoos or body piercings.

The record confirms that the Veteran engaged in combat while on active duty, as exemplified, in part, by the fact that he received the Purple Heart. In cases where a veteran asserts service connection for injuries or disease incurred or aggravated in combat, 38 U.S.C.A. § 1154(b) and its implementing regulation, 38 C.F.R. 
§ 3.304(d), are applicable. This statute and regulation ease the evidentiary burden of a combat veteran by permitting the use, under certain circumstances, of lay evidence. If the veteran was engaged in combat with the enemy, VA shall accept as sufficient proof of service connection satisfactory lay or other evidence of service incurrence, if the lay or other evidence is consistent with the circumstances, conditions, or hardships of such service. 38 U.S.C.A. § 1154(b); 38 C.F.R. 
§ 3.304(d). The Federal Circuit has held that in the case of a combat Veteran not only is the combat injury presumed, but so is the disability due to the in-service combat injury. Reeves v. Shinseki, 682 F.3d 988, 998-99 (Fed. Cir. 2012). To establish service connection, however, there must be the evidence of a current disability and a causal relationship between the current disability and the combat injury. Id. (citing Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). Moreover, the service treatment records confirm he sustained a shell fragment wound to the head in December 1968.

Despite the foregoing, the Board notes that hepatitis C is a complex disease that requires specific medical testing to diagnose. Further, as noted above, there was no test available to detect the presence of hepatitis C until 1989. Nevertheless, the first competent medical evidence of hepatitis C appears to be records dated in 2001, many years after the Veteran's separation from service and the development of such testing. Moreover, the Veteran has acknowledged various post-service risk factors to include alcohol use, intranasal and intravenous drug use, as well as high risk sexual activity. Therefore, the Board finds that competent medical evidence is required to determine whether the Veteran's hepatitis C is etiologically linked to service, to include his possible exposure to "blood products" while being treated for the shrapnel wound to his head.

Here, nothing on file shows that the Veteran has the requisite knowledge, skill, experience, training, or education to render a medical opinion. Consequently, his contentions cannot constitute competent medical evidence. 38 C.F.R. § 3.159(a)(1).

The Board further observes that the only competent medical opinions of record to address the etiology of the Veteran's hepatitis C are those of the May 2005 and March 2012 VA examiners, both of which are against the condition being etiologically linked to service.

In determining the probative value to be assigned to a medical opinion, the Board must consider three factors. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). The initial inquiry in determining probative value is to assess whether a medical expert was fully informed of the pertinent factual premises (i.e., medical history) of the case. A review of the claims file is not required, since a medical professional can also become aware of the relevant medical history by having treated a Veteran for a long period of time or through a factually accurate medical history reported by a Veteran. See Id. at 303-04. The second inquiry involves consideration of whether the medical expert provided a fully articulated opinion. See Id. A medical opinion that is equivocal in nature or expressed in speculative language does not provide the degree of certainty required for medical nexus evidence. See McLendon v. Nicholson, 20 Vet. App. 79 (2006). The third and final factor in determining the probative value of an opinion involves consideration of whether the opinion is supported by a reasoned analysis. The most probative value of a medical opinion comes from its reasoning. Therefore, a medical opinion containing only data and conclusions is not entitled to any weight. In fact, a review of the claims file does not substitute for a lack of a reasoned analysis. See Nieves-Rodriguez, 22 Vet. App. at 304; see also Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) ("[A] medical opinion ... must support its conclusion with an analysis that the Board can consider and weigh against contrary opinions."). 

The Board has already noted that the JMR contended the May 2005 VA examiner's opinion was inadequate, in pertinent part, because it did not address the Veteran's account of possible exposure to "blood products" while on active duty. However, the instructions for the March 2012 VA examination directed the examiner to consider such exposure; and the examiner's rationale noted, among other things, that there was no documentation in the service treatment records the Veteran was ever given a blood transfusion, that he did sustain a shrapnel wound to the forehead in December 1968 where he was taken to the hospital and it was removed under sterile conditions; and that there was no other documentation of contact with blood or blood products. In other words, the deficiency noted by the JMR regarding the May 2005 VA examination was corrected by the March 2012 VA examination.

The Board further notes the Veteran's testimony at his February 2008 hearing indicates he was not sure if he was exposed to blood products when treated for his shrapnel wound, but thought it was possible. Specifically, he testified:

The only time I can think of being exposed to blood products was basically when I was wounded and taken to the hospital, whatever it was that night, but it was very busy and very confusing and something could have happened there, I don't know.

Transcript p. 10.

The March 2012 VA examiner's opinion that the hepatitis C was not incurred in or otherwise the result of active service was not expressed in speculative or equivocal language. Moreover, the Board reiterates that the March 2012 VA examiner was familiar with the Veteran's medical history from review of his VA claims folder; and that no competent medical evidence is of record which explicitly refutes the examiner on this matter. The Board also observes the March 2012 VA examiner emphasized the Veteran had more extensive risk factors post active duty with high risk sexual activity, intravenous drug use, intranasal cocaine use and alcohol abuse. As such, it would appear the March 2012 VA examiner thought the hepatitis C was more likely due to the post-service risk factors. Consequently, the Board concludes this examination is adequate, persuasive, and entitled to significant probative value in the instant case.

In view of the foregoing, the Board finds that the preponderance of the competent medical and other evidence of record is against finding the Veteran's hepatitis C was incurred in or otherwise the result of his active service, to include any injury sustained in combat. As the preponderance of the evidence is against this claim, the benefit of the doubt doctrine is not for application. See generally Gilbert, supra; see also Ortiz v. Principi, 274 F.3d 1361 (Fed. Cir. 2001). No other basis for establishing service connection for the claimed disabilities is otherwise demonstrated by the evidence of record, to include the presumptive provisions of 38 C.F.R. §§ 3.307 and 3.309 or as secondary to a service-connected disability pursuant to 38 C.F.R. § 3.310. Consequently, the benefit sought on appeal must be denied.

PTSD

Disabilities must be reviewed in relation to their history. 38 C.F.R. § 4.1. Other applicable, general policy considerations are: interpreting reports of examination in light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability, 38 C.F.R. § 4.2; resolving any reasonable doubt regarding the degree of disability in favor of the claimant, 38 C.F.R. § 4.3; where there is a question as to which of two evaluations applies, assigning the higher of the two where the disability picture more nearly approximates the criteria for the next higher rating, 38 C.F.R. § 4.7; and, evaluating functional impairment on the basis of lack of usefulness, and the effects of the disability upon the person's ordinary activity, 38 C.F.R. § 4.10. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

The degree of impairment resulting from a disability is a factual determination and generally the Board's primary focus in such cases is upon the current severity of the disability. Francisco v. Brown, 7 Vet. App. 55, 57-58 (1994); Solomon v. Brown, 6 Vet. App. 396, 402 (1994). However, in Fenderson v. West, 12 Vet. App. 119 (1999), it was held that the rule from Francisco does not apply where the appellant has expressed dissatisfaction with the assignment of an initial rating following an initial award of service connection for that disability. Rather, at the time of an initial rating, separate ratings can be assigned for separate periods of time based on the facts found - a practice known as "staged" ratings. More recently, the Court held that "staged" ratings are appropriate for an increased rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007). In this case, the Veteran is already in receipt of such "staged" ratings for his service-connected PTSD.

With regard to the Veteran's request for an increased schedular evaluation, the Board will only consider the factors as enumerated in the applicable rating criteria. See Massey v. Brown, 7 Vet. App. 204, 208 (1994); Pernorio v. Derwinski, 2 Vet. App. 625, 628 (1992).

Diagnostic Code 9411 provides that PTSD is evaluated under the general rating formula used to rate psychiatric disabilities other than eating disorders, pursuant to 38 C.F.R. § 4.130. When a mental condition has been formally diagnosed, but symptoms are not severe enough either to interfere with occupational and social functioning or to require continuous medication, a noncompensable (zero percent) evaluation is warranted. Occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or; symptoms controlled by continuous medication warrants a 10 percent evaluation. 

A 30 percent disability rating is in order when there is occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events). 

A 50 percent rating is warranted when there is occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped, speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short and long term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintain effective work and social relationships. 

A 70 percent rating is warranted where there is occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); inability to establish and maintain effective relationships.

A 100 percent rating is warranted where there is total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name.

When evaluating a mental disorder, the rating agency shall consider the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the veteran's capacity for adjustment during periods of remission. 38 C.F.R. 
§ 4.126(a). The rating agency shall assign an evaluation based on all the evidence of record that bears on occupational and social impairment rather than solely on the examiner's assessment of the level of disability at the moment of the examination. Id. However, when evaluating the level of disability from a mental disorder, the rating agency will consider the extent of social impairment, but shall not assign a evaluation on the basis of social impairment. 38 C.F.R. § 4.126(b).

The Court has held that the use of the phrase "such symptoms as," followed by a list of examples, provides guidance as to the severity of symptomatology contemplated for each rating. In particular, use of such terminology permits consideration of items listed as well as other symptoms and contemplates the effect of those symptoms on the claimant's social and work situation. Mauerhan v. Principi, 16 Vet. App. 436 (2002). More recently, in Vazquez-Claudio v. Shinseki, 713 F.3d 112 (Fed. Cir. 2013), the Federal Circuit held that a veteran may only qualify for a given disability rating under § 4.130 by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration. In other words, § 4.130 contemplates initial assessment of the symptoms displayed by the veteran, and if they are of the kind enumerated in the regulation, an assessment of whether those symptoms result in occupational and social impairment consistent with that schedular rating.

Initially, the Board finds the Veteran is entitled to a rating of 30 percent for his service-connected PTSD prior to August 20, 2008, as the record reflects the disability more nearly approximated than not the criteria of occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care and conversation normal), due to such symptoms as: depressed mood, anxiety, panic attacks, chronic sleep impairment, and mild memory loss. For example, there is evidence of depressed mood, chronic sleep impairment, as well as panic/anxiety attacks at the May 2005 VA examination. Although his memory was noted as being normal on the mental status examination itself, he reported symptoms that appear consistent with mild memory loss.

The Board also notes the May 2005 VA examination assigned a global assessment of functioning (GAF) score of 70. Such designations are based on a scale reflecting the "psychological, social, and occupational functioning in a hypothetical continuum of mental health-illness." Carpenter v. Brown, 8 Vet. App. 240, 242 (1995). GAF scores ranging between 61 to 70 reflect some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, and has some meaningful interpersonal relationships. See Diagnostic and Statistical Manual of Mental Disorders, Washington, DC, American Psychiatric Association (DSM) (which has been adopted by the VA in 38 C.F.R. §§ 4.125, 4.130). This GAF score, as well as the anecdotal evidence of record, indicates the Veteran's occupational and social impairment was consistent with that of the 30 percent criteria during this period. 

In view of the foregoing, the Board finds the Veteran is entitled to a rating of at least 30 percent for his service-connected PTSD for the period prior to August 30, 2008. See 38 C.F.R. §§ 4.3, 4.7.

The Board also finds the Veteran does not meet or nearly approximate the criteria for a rating in excess of 30 percent prior to August 30, 2008. The record does not reflect his PTSD was manifested during this period by occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped, speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short and long term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood other than the already acknowledged depressed mood. In pertinent part, the May 2005 VA examination found his affect was constricted, but did not find flattened affect. Further, his speech was unremarkable; it was not stated he had panic attacks more than once a week; he was found to have average intelligence, which indicates he was able to understand complex commands; remote, recent, and immediate memory were found to be normal despite his complaints; his judgment was intact; and his ability to do abstract thinking was shown by his average intelligence, thought process and content being unremarkable, and he was able to do serial 7s and spell a word forwards and backwards. 

The Board also finds the Veteran is entitled to a rating of 70 percent for his service-connected PTSD for the period from August 20, 2008; as his PTSD more nearly approximated than not the criteria of occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as suicidal ideation, obsessional rituals which interfere with routine activities, near-continuous panic or depression affecting the ability to function independently, appropriately and effectively, impaired impulse control (such as unprovoked irritability with periods of violence), neglect of personal appearance and hygiene, difficulty in adapting to stressful circumstances (including work or a worklike setting), and inability to establish and maintain effective relationships. In pertinent part, the Board notes the Veteran has reported deficiency in family relations during this period to include the fact he had gotten a divorce. He reported suicidal ideation on both the August 2008 and April 2012 VA examinations; as well as impaired impulse control. The August 2008 VA examination also noted his grooming was marginal, which reflects neglect of personal appearance and hygiene. He also reported a handwashing ritual at this examination which the examiner found met the threshold level for obsessive-compulsive disorder; i.e., obsessional rituals which interfere with routine activities. His description of his depression and anxiety symptoms on this examination appears consistent with that of near-continuous panic or depression affecting the ability to function independently, appropriately, and effectively. In addition, the April 2012 VA examiner explicitly found the Veteran's PTSD to be manifested by difficulty in adapting to stressful circumstances (including work or a worklike setting), and inability to establish and maintain effective relationships. The Veteran's account of his occupational and social impairment at the August 2008 VA examination appears consistent with such findings as well.

The Board further notes the August 2008 VA examination assigned the Veteran a GAF score of 37. Scores ranging from 31 to 40 reflect some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up other children, is defiant at home, and is failing at school). As such, this score appears consistent with the level of occupational and social impairment associated with the 70 percent rating. 

In view of the foregoing, the Board finds that the Veteran is entitled to a rating of at least 70 percent for his service-connected PTSD for the period prior to August 30, 2008. See 38 C.F.R. §§ 4.3, 4.7.

The Board also finds the Veteran does not meet or nearly approximate the schedular criteria for a rating in excess of 70 percent from August 30, 2008. Nothing in the evidence of record, to include the medical treatment records and VA examinations, reflect he was found to have such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Further, subsequent to the August 2008 VA examination the treatment records reflect the Veteran was assigned GAF scores predominantly in the 51 to 69 range. As already noted, scores in the 61 to 70 range generally indicate mild occupational impairment; while scores ranging from 51 to 60 reflect more moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co- workers). Moreover, the April 2012 VA examiner stated that the level of such impairment was best summarized as occupational and social impairment with reduced reliability and productivity. Therefore, it does not appear he was found to have total occupational and social impairment due to his PTSD during this period.

For these reasons, the Board concludes the Veteran is entitled to a 30 percent rating for his PTSD prior to August 20, 2008; and a rating of 70 percent thereafter. In determining that no higher ratings were warranted, the Board notes it considered the potential applicability of "staged" rating(s), but found no distinctive period(s) where the Veteran's PTSD met or nearly approximated the criteria for rating(s) in excess of these evaluations.

In exceptional cases an extraschedular rating may be provided. 38 C.F.R. § 3.321. The Court has set out a three-part test, based on the language of 38 C.F.R. 
§ 3.321(b)(1), for determining whether a Veteran is entitled to an extraschedular rating: (1) the established schedular criteria must be inadequate to describe the severity and symptoms of the claimant's disability; (2) the case must present other indicia of an exceptional or unusual disability picture, such as marked interference with employment or frequent periods of hospitalization; and (3) the award of an extraschedular disability rating must be in the interest of justice. Thun v. Peake, 22 Vet. App. 111 (2008), aff'd, Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). 

The Board finds that the rating criteria contemplate the Veteran's PTSD. By its own terms, as well as the holdings in Mauerhan and Vazquez-Claudio, the schedular criteria are not limited to the symptoms mentioned in the rating schedule. As detailed above, the Board's focus was the affect all of his PTSD symptoms have upon his functional ability particularly the extent of occupational and social impairment. Therefore, the Board finds that the rating criteria are adequate to evaluate the Veteran's service-connected PTSD and referral for consideration of extraschedular rating is not warranted.

TDIU

It is the established policy of the VA that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. 38 C.F.R. § 4.16(b). A total disability will be considered to exist when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation. A total disability may or may not be permanent. Total ratings will not be assigned, generally, for temporary exacerbations or acute infectious diseases except where specifically prescribed by the schedule. 38 C.F.R. § 3.340(a).

A total disability rating for compensation purposes may be assigned where the schedular rating is less than total, where it is found that the disabled person is unable to secure or follow substantially gainful occupation as a result of a service-connected disability ratable at 60 percent or more or as a result of two or more disabilities, providing at least one disability is ratable at 40 percent or more, and there is sufficient additional service-connected disability to bring the combined rating to 70 percent or more. 38 C.F.R. §§ 3.340, 4.16(a).

For the reasons stated above, the Board found the Veteran was entitled to a 70 percent rating for his service-connected PTSD for the period from August 20, 2008. He is also service connected for shrapnel wound residuals to the left temple, but this disability is rated as zero percent disabling (noncompensable). Regardless, he does satisfy the schedular criteria for consideration of a TDIU.

As discussed above, the Board found that the evidence of record did not demonstrate the Veteran's PTSD was manifested by total occupational and social impairment to include the GAF scores assigned in this case, as well as the opinions expressed by the April 2012 VA examiner. Nevertheless, in the March 2014 addendum, the April VA examiner thought it would be difficult for Veteran to re-enter the work force; that if he returned to work it was most likely his PTSD symptoms would increase dramatically, as would his; and opined that it would be harmful to his psychological well-being to return to work at this time. Stated another way, the examiner indicates that while the Veteran may be able to obtain substantially gainful employment, he would not be able to maintain substantially gainful employment as this would cause a dramatic increase in his PTSD symptomatology. Resolving all reasonable doubt in favor of the Veteran, the Board finds this reflects he is entitled to a TDIU due to service-connected disability.

ORDER

Entitlement to service connection for hepatitis C is denied.

A rating of 30 percent for the Veteran's service-connected PTSD prior to August 20, 2008, is granted, subject to the law and regulations governing the payment of monetary benefits.

A rating of 70 percent for the Veteran's service-connected PTSD from August 20, 2008, is granted, subject to the law and regulations governing the payment of monetary benefits.

Entitlement to a TDIU due to service-connected disability is granted.

______________________________________________
C. CRAWFORD
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs